Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile: (415) 398-2820
Email: sfinestone@pobox.com

Janet Brayer (117397)
LAW OFFICES OF JANET BRAYER
230 California Street, Suite 600
San Francisco, CA 94111
Telephone: (415) 445-9555
Facsimile: (415) 445-9541

Attorneys for Plaintiff
Kieran Buckley

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>DAVID WILLIAM BARTENWERFER and<br><br>KATE MARIE BARTENWERFER<br><br>　　Debtors.<br>_____<br><br>KIERAN BUCKLEY<br><br>　　Plaintiff,<br><br>vs.<br><br>DAVID WILLIAM BARTENWERFER AND<br><br>KATE MARIE BARTENWERFER<br><br>　　Defendants.<br>_____ | Case No. 13-30827<br><br>Chapter 7<br><br>Adversary Proceeding No.<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**<br>**11 U.S.C. Section 523(a)(2)** |

Plaintiff Kieran Buckley ("Plaintiff") alleges as follows:

**PREFATORY ALLEGATIONS**

1.   This is an action to determine the dischargeability of a debt under 11 U.S.C Section 523(a)(2) and is brought as an adversary proceeding in accordance with Bankruptcy Rules 4007and

COMPLAINT - BUCKLEY                                              1

§§7001 et seq.

2. The Debtors and Defendants, David and Kate Bartenwerfer ("Defendants"), filed a petition under Chapter 7 of the Bankruptcy Code in this Court on April 18, 2013 in a case denominated *In Re David William Bartenwerfer and Kate Marie Bartenwerfer,* Case Number 13-30827, and, since that day, have been debtors and subject to the jurisdiction of this Court.

3. This is an action under 11 U.S.C. §523(c) for a determination excepting plaintiff's debt from discharge. This court has jurisdiction of this action under 11 U.S.C. §1334, and this complaint is a core proceeding pursuant to 28 U.S.C. sections 157(b)(2)(I). Venue of this lawsuit is proper pursuant to 28 U.S.C. section 1409

4. Plaintiff is a creditor by reason of a jury verdict and related judgment he obtained against Defendants in San Francisco Superior Court, Case No. CGC 09-489793 arising out of torts committed by Defendants against Plaintiff. The amount of the judgment is $444,671, later reduced by remittitur to $234,671. In addition to the amount of the judgment, Plaintiff is entitled to recovery attorneys' fees totaling $378,491.

## FIRST CAUSE OF ACTION

### (Fraud - Section 523(a)(2))

5. Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 4.

6. In March 2008, Plaintiff purchased a 3,959 square foot family home located at 549 28th Street, San Francisco, California (the "Property") from Defendants for $2,100,000. Prior to selling Plaintiff the Property, Defendants engaged in the building and construction of an addition on the Property with the intent of then selling the Property; Seller Defendants were acting as the general contractors for the development and rehabilitation of the Property. Sellers purchased the Property on February 2, 2005 for $880,000, and then on October 12, 2006 applied for a permit to begin remodeling work. Sellers extensively remodeled and added on to the Property, increasing the square footage dramatically by adding decks and rooms. The original house was 2,650 square feet and included a combined living room/nook/kitchen, two bedrooms and one bathroom. The general scope of the remodeling included extending the exterior wall up to 30 feet at the rear elevation, construction of new retaining walls, an

additional finished basement, a new mater suite, two new bedrooms, two new decks, a new family room, remodeled living room, dining room and kitchen, and modified/upgraded plumbing, electrical and mechanical systems. The roof included both a new built up roof and modifications to the existing roof, including the installations of skylights.

7. In building the Property, Defendants failed to design and construct the Property in accordance with applicable building codes and construction practices, and failed to manage the unlicensed contractors and subcontractors who they hired to work on the Property, or engaged in the construction themselves without knowledge of construction codes and without a contractor's license. Defendants failed to obtain necessary permits or obtain final sign offs, failed inspections of work at the Property and concealed information from Plaintiff, including but not limited to concealing that the work performed at the Property was not constructed in compliance with building codes, failed to disclose multiple leaks at the Property, failed to disclose the existence of mold and inadequate ventilation, failed to disclose to Plaintiff that work at the Property had not been performed in a workmanlike manner, failed to disclose that the work had been performed by unlicensed contractors or by Defendants themselves, and failed to disclose that the construction did not comply with building standards. Defendants represented that the work at the Property had been done by licensed contractors with permits and that only the final inspection needed to be completed. Defendants described the construction work at the Property as being "meticulous." Defendants did not disclose that all permits were still "open," and that there had been no electrical or plumbing "final" sign off despite the fact that all walls were closed at the time of sale.

8. After Plaintiff acquired the Property from Defendants he discovered the following construction defects on the Property:

   a. Defects in fire installations, including but not limited to master bedroom fireplace missing the factory provided brick surround.

   b. Defects in flooring, including but not limited to garden level hardwood floor buckling throughout bedroom and improper moisture levels and related mold issues.

   c. Defects in plumbing, including but not limited to lower toilet backing-up, improperly installed sewage ejection system/sump pump systems, toilet that runs intermittently at all

COMPLAINT - BUCKLEY                             3

times, reversal of hot and cold water, deficiencies in water supplies and water heating, toilet flush handles improperly installed and a sump pump that had at one point overflowed into the interior of the house.

    d.     Defects in mechanical systems, including but not limited to improperly installed and kinked air ducting, defective heating/airflow systems and the sump pump system.

    e.     Defects in installation of doors and windows, including but not limited to doors jamming and/or not latching, windows not opening and windows that were installed out of square and would not be warranted by Pella Windows due to improper installation.

    f.     Defects in installation of appliances, including but not limited to a dishwasher not working and dryer vents that were not installed pursuant to code.

    g.     Defects in installation of telephone and cable lines.

    h.     Defects in railings and decking, including but not limited to loose deck rail spindles.

    i.     Failures to obtain permits or obtain final sign off on permits for work performed at the Property.

    j.     Defects in gutters, improperly installed gutters and downspouts.

    k.     Headroom issues on stairs.

    l.     Loose installation and debris in the crawlspace.

    m.     Electrical issues: Phone/data cables had joints in wall cavity not in junction boxes (typical); master bath electric wiring had to be changed using #12 wires instead of #14 (not allowed for 20 A circuit); the main ground rod was not connected to main panel directly; the ground level sump pump was connected to house circuit with GFI and was not connected directly to the main panel; junctions at outside electrical conduit in back yard were not waterproofed and had to be replaced.

    i)     Numerous leaks allowing water entry into the Property.

    9.     Prior to Plaintiff's purchase of the Property, however, Defendants continually reassured and advised him that all work performed at the Property and all material installations had been fully inspected, signed off and approved by the City and County of San Francisco, and that Defendants had provided Plaintiff with a full and complete set of plans submitted to the City.

COMPLAINT - BUCKLEY     4

10. At the times Defendants made these representations, or failed to disclose material information, they knew the representations were false and/or the failure to disclose information was material to Plaintiff. Defendants also failed to make disclosures required by written transfer disclosure statements.

11. Plaintiff alleges that these representations made by and failures to disclose were made by Defendants with the intent to induce Plaintiff to rely on the information (or absence of disclosures) and to go forward with his purchase of the Property. In reliance on the representations, Plaintiff completed his purchase of the Property. Had he known the truth about the Property, Plaintiff would not have gone forward with his purchase of the Property.

12. Plaintiff's reliance on Defendants' representations and/or failures to disclose was justifiable.

13. As a result of Defendant's actions, Plaintiff has suffered damages as found by the jury in the pre-petition state court trial, to wit, $234,671 plus attorneys' fees and costs totaling $378,491.

14. In doing the above-described wrongful and fraudulent acts and engaging in the foregoing course of conduct, Defendants acted fraudulently, oppressively, maliciously, and in flagrant, aggravated, wanton, and reckless disregard of the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

Wherefore, Plaintiff prays for damages as follows:

1. A determination that Defendants' debt to Plaintiff, including interest accrued at the legal rate, is non-dischargeable;

2. Punitive damages according to proof;

3. Costs of suits incurred herein; and

4. Such other and further relief as the court deems proper.

Dated: July 15, 2013            LAW OFFICES OF STEPHEN D. FINESTONE


/s/ Stephen D. Finestone
Stephen D. Finestone
Attorney for Plaintiff

Complaint.wpd